SOMMERVILLE, J.
Defendant is charged with having attempted to bribe a witness for the state to keep him from appearing and testifying on the trial of a pending cause. There was a verdict found against the accused, and sentence was pronounced. Defendant appeals.
The first three bills of exceptions are of the same tenor, and are taken to the ruling of the court permitting the following questions' propounded by the district attorney to the defendant, who was a-witness in his own behalf, to be answered:
(1) “How many times have you been convicted before this court for retailing spíirituous and intoxicating liquors without a license? ” (2) “Have you not been convicted in the town of Hammond for selling whisky, and served a term in jail? ” (3) “1-Iow many times have you been convicted for selling liquors without a license in Mississippi?”
[1] Objections were made by the defendant to the questions propounded to him, upon the grounds that they were: (1) Direct attacks upon his character, and efforts to prove him guilty of independent and collateral offenses, when he had offered no proof as to his habits of retailing or gelling whisky, or otherwise; and (2) that this was a direct attack on the character of the accused, when he had not offered any testimony to prove his good character, and had not attempted to prove his good reputation.
In the' ease of State v. Waldron, 128 La. 559, 54 South. 1009, 34 L. R. A. (N. S.) 809, where a somewhat similar question was presented to us for consideration, we say:
“Defendant tendered himself as a witness, and was subject to the same treatment as any other witness; and where a litigant, or defendant in a criminal prosecution, tenders a witness, thereby in effect vouching for his credibility, and asking the court and the jury to accept him as a person to be believed, the opposing litigant, or the state, has the right to elicit further information about him than is conveyed by the mere name that he chooses to give. State v. Taylor, 45 La. Ann. 605, 12 South. 927; State v. Murphy, 45 La. Ann. 959, 13 South. 229; State v. Casey, 110 La. 712, 34 South. 746; State v. Barrett, 117 La. 1086, 42 South. 513; State v. Caron, 118 La. 356, 357, 42 South. 960.
“ ‘Under most, if not all, of the modern statutes, the accused may become a witness if he so desires; but he is not obliged to, and, if he does, he is, in general, subject to cross-examination and impeachment, the same as any other witness, so long as his constitutional rights or privileges, not in some way expressly waived by him, are not invaded.’ Elliott on Evidence, p. 6, par. 2705.
“It is admissible to ask the witness if he has not been in the penitentiary. Real v. People, 42 N. Y. 270; Wharton, Cr. Ev. par. 474.”
And we there held that it was permissible to require the defendant while on the witness stand to answer the questions: (1) Are you not a fugitive from justice from Arkansas? and (2) Are you a fugitive from justice from Phillips county, Ark.?
In the present case the defendant is asked and required to answer whether he has been convicted of certain offenses, and how many times he has been convicted of having committed them. Our reasons in the case of State v. Waldron, supra, for requiring a defendant, who has' voluntarily taken the witness stand, to answer the questions there stated, have application in this ease. All of these questions go towards affecting his cred *493 ibility as a witness; for the same rules must be applied to him as are applied to other witnesses for him.
Some doubt has been expressed as to the legality of requiring a witness to answer whether he has been convicted, and, if so, of what offense, for the reason that the record would be the best evidence of those facts; but we know of no good reason why the witness may not answer whether or not he has been convicted of an offense particularized in the question. He is fully informed, and will hardly be liable to make a mistake about such an important matter to him.
Judge Cooley, speaking for the Michigan court, has said on this point:
“We think the reasons for requiring the record evidence of a conviction have very little application to a case where the party convicted is himself upon the stand, and is questioned concerning it, with a view to sifting his character, upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight that it may almost be looked upon as purely imaginary; while the danger that worthless characters will, unexpectedly, be placed upon the stand, with no •opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent.” Clemens v. Conrad, 19 Mich. 170.
And Church, C. J., in Connors v. People, 50 N. Y. 240, says:
“The prohibition in the Constitution is against compelling an accused person to become a witness against himself. If he consents to become a witness in the case voluntarily, and without any compulsion, it would seem to follow that he occupies for the time being the position of a witness with all its rights and privileges and subject to all its duties and obligations. If he gives evidence which bears against himself, it results from his voluntary act of becoming a witness, and not from compulsion. His own act is the primary cause, and, if that was voluntary, he has no reason to complain.”
Mr. Wigmore, in his valuable work on Evidence, appears to approve the following rule:
“That the voluntary taking of the stand is a waiver as to all facts whatever, including even those which merely affect credibility.” Page 3154.
Again, that author says, at page 3159:
“That as a witness his character [that of the accused] may be impeached. In which status is he to be regarded? Is his status as an accused to displace his status as a witness? This question, already elsewhere examined on principle (ante, section 890), is universally answered in the negative. The accused, as a witness, is open to impeachment like any other witness.” “As a witness, then, he is subject to proof which would not be receivable against him as an accused except on certain conditions.” Page 3161. “As a witness, the accused may be impeached by proof of conviction of another crime. Ante, section 985. But whether this ■proof may be made on his own cross-examination, without producing a copy of the record of conviction, involves another principle. Ante, section 1270.” Page 3162.
And that same author says at page 1542:
“That the only proper rule is the allowance of an admission on the examination of the witness to be impeached, but the requirement of a copy or an abstract when proof is made by another witness; this rarely by common-law decision, but widely by statute.”
And he adds that this rule obtains in the majority of jurisdictions.
The ruling of the trial judge was correct, and it will not be disturbed.
[2] The next bill of exceptions is taken to the following instructions of the trial judge:
“That the state does not have to prove any intent to bribe or keep away from, but upon the mere proof of an offer of money to do so is sufficient.”
The indictment in this case is brought under section 880, R. S. It defines a statutory crime. State v. Taylor, 44 La. Ann. 967, 11 South. 576; State v. Desforges, 47 La. Ann. 1167, 17 South. 811.
Counsel for defendant seems to think it is necessary for the state to allege and prove an intent, in order to convict under section 880, which is as follows: *495 hai’d labor in the penitentiary, not less than one nor more than five years.”
*493 “Whoever shall be convicted of bribery, or attempting to bribe any witness, or by any force, or threat, or intimidation of any kind, or by persuasion, to prevent any witness in a criminal case, in any of the stages of prosecution, from making the oath in any order to obtain a warrant of arrest, to the final • trial inclusive, from appearing or testifying as a witness, shall be sentenced to imprisonment at
*495 [3] Where an offense is denounced as unlawful by statute, the doing of the act constitutes the offense, and it is unnecessary to allege and prove guilty intent. The party accused—
“may be morally innocent so far as to misunderstand or not even know the law he violates, and yet it is necessary for the interest of society that he should not set that up as an excuse.”
“When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact, no matter how sincere, is no defense.” Wharton’s Crim. Law, § 88.
That author further says:
“The function of imposing indictability on pernicious acts, irrespective of intent, is one which has been exercised by Legislatures, not only frequently but from necessity. * * * Where the Legislature imposes a specific penalty on a person doing a particular thing, irrespective of scienter, it will be the duty of the courts to enforce the prohibition. The question is one of policy; and this may be taken into consideration where the legislative meaning is sought. That a man should be convicted of a malicious act without proof of malice, or of a negligent act without proof of negligence, is,' of course, an enormity which no Legislature could be supposed to direct. But it is otherwise as to certain mischievous acts which it may be a sound policy to prohibit arbitrarily, because they may imperil public safety, * * * and because to require scienter to be proved would be to defeat the object of the statutes, since, in many cases, and those the most dangerous of the class, it would be out of the power of the prosecution to prove scienter beyond a reasonable doubt. The Legislature may properly say: ‘In such cases we presume scienter.’ * * * A fortiori is this the case when a statute, on grounds of public policy, makes scienter irrelevant.” Wharton’s Crim. Law, vol. 1, page 116.
In State v. Southern Ry., 122 N. C. 1052, at page 1061, 30 S. E. 133, at page 136, 41 L. R. A. 247, at page 249, the court of North Carolina say:
“If there is anything well settled by the decisions of this court, it is that, wherever an act is denounced as unlawful by statute, the doing of that act constitutes the offense, and the intent with which the act is done is immaterial; and this has been settled law for a long period of time.”
And we say in State v. Dowdell, 106 La. 650, 31 South. 153:
“Where the statute makes the doing of a particular act indictable, irrespective of intent or purpose, these particular matters do not enter as factors for the defense, and evidence and instructions, in respect to them are not pertinent.”
There is no reversible error in the charge complained of.
The next bill of exceptions is a general one to the refusal of a motion for a new trial, on the ground that there was testimony admitted which was irrelevant, inadmissible, and prejudicial to the defendant, which testimony is attached to and made the basis of the motion for a new trial. As the portions of the testimony complained of are not pointed out, or argued orally or on the briefs, this bill will not be further noticed.
There is no error in the verdict and sentence appealed from, and. they are affirmed.